IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL IAN WEINER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BRENDAN F. KELLY, in his official | ) |
| capacity as Director of the Illinois State | ) |
| Police, and ELIZABETH LEAHY, in her | ) |
| official capacity as Illinois State Police | ) |
| Firearm Safety Office Counsel, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AT EQUITY

Plaintiff, DANIEL IAN WEINER, by and through LAW FIRM OF DAVID G.

SIGALE, P.C., his attorney, and for his Complaint for legal, declaratory and

injunctive relief against the Defendants, BRENDAN F. KELLY, in his official

capacity as Director of the Illinois State Police, ELIZABETH LEAHY, in her

capacity as Illinois State Police Firearm Safety Office Counsel, states and alleges as

follows:

## INTRODUCTION

The "clear and present danger" prohibitor in Section 65/8(f) of the Illinois

Firearm Owners Identification Card Act ("FOID Card Act") (430 ILCS 65/1, *et seq.*),

where a variety of individuals, including law-enforcement officers, have the power

to submit a form to the Illinois State Police ("ISP") that causes the ISP to revoke a

person's FOID card, works a significant and unconstitutional injustice upon law-

abiding persons who have done nothing wrong. The revocation comes with no accountability or availability for cardholders to challenge (or even learn about) the circumstances of the revocation. Most importantly, there is no escape valve where one who can prove the revocation was in error can bypass the process through an adversarial hearing or other meaningful procedure.

The above is true even if the revoked cardholder can demonstrate the revocation was a mistake or, in Plaintiff's case, a hoax. Instead, like every other person who has their FOID card revoked pursuant to this subsection, Plaintiff must submit to an expensive and intrusive psychological examination and certification process, submit certain medical records to the ISP, and gather character references among friends and family, all of whom must be informed of the circumstances of the revocation – a process made much difficult when even the cardholder does not know the circumstances of the revocation. This process is an additional indignity on top of the revocation itself.

This flaw and resulting breakdown of the FOID appeal system have wrongfully denied Plaintiff's rights and endangered public safety, as qualified persons such as Plaintiff are denied their rights and the ability to self-defense and defense of their families with a firearm while languishing in the FOID appeal system, during which time their CCLs are also revoked – with no guarantee of their appeals being successful and their rights restored - while criminals who ignore the FOID Card Act and the concealed carry licensing requirements of the Firearms Concealed Carry Act (430 ILCS 66/1, *et seq.*) carry on unaffected.

The right to keep and bear arms for defense of hearth and home is a fundamental individual right (*See District of Columbia v. Heller*, 554 U.S. 570 (2008), and applies to the Defendants (*See McDonald v. City of Chicago*, 561 U.S. 742 (2010)). The right to the public carry of firearms is also fundamental, as much so as the possession of firearms inside one's home. *See New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Previous to *Bruen*, in response to the Seventh Circuit's decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), Illinois became the last State in America to allow the public carry of firearms for self-defense purposes.

However, the laws governing the licensing of firearm possession and concealed carry in Illinois have resulted in a system that, for some, result in a permanent denial of that right. This is due to a system that is extremely quick to deny or revoke persons' rights, and slow in acknowledging or restoring them. This is especially egregious when Plaintiff should not be in this system in the first place.

Plaintiff complains that facially and as applied to him under the facts of the instant case, the labyrinthine procedures the Illinois State Police ("ISP") requires citizens to navigate in order to obtain relief from a clear and present danger determination—procedures which lack of any way to challenge the underlying basis of the determination—violate Plaintiff's due process Fourteenth Amendment rights.

Plaintiff also complains that facially and as applied to him under the facts of the instant case, ISP's determination that Plaintiff poses a clear and present danger and ISP's revocation of Plaintiff's FOID Card—acts which deprive Plaintiff of his

ability to lawfully keep and bear arms—violate Plaintiff's Second Amendment rights.

This action seeks to restore Plaintiff's right to keep and bear arms in a manner consistent with his right to due process. Plaintiff seeks declaratory relief, as well as preliminary and permanent injunctive relief.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202, and 42 U.S.C. § 1983 because this action seeks to redress the Defendants' deprivation, under color of state law, of rights protected by the U.S. Constitution.

2. Venue lies in this Court pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to this action is harming Plaintiff in this District.

## PARTIES

Plaintiff

3. Plaintiff Daniel Ian Weiner ("Plaintiff") is a natural person who resides in Chicago, Illinois. Weiner is an honorably-discharged veteran of the United States Marine Corps who served in a Reconnaissance Battalion and, *inter alia*, continued on to obtain a Graduate Certificate in International Relations and National Security Studies from Stanford University and an MBA from Georgetown University. He is currently employed as a sales engineer for an international manufacturer of fiber optic communications systems for voice, data and video network applications.

<u>Defendants</u>

4.      Defendant Brendan F. Kelly is the Director of the Illinois State Police ("ISP"). The ISP is a department of the executive branch of the State of Illinois created by statute, 20 ILCS 2605/2605-1, *et seq.* Under the Illinois Firearm Owners Identification Card Act, 430 ILCS 65/1, *et seq.* ("FOID Card Act"), the ISP is charged with administering the system for consideration applications for, granting, denying, and/or revoking individual licenses to possess firearms under the FOID Card Act.

5.      Defendant Kelly is the ISP employee directly responsible for the administration of the FOID Card Act. As such, Defendant Kelly is responsible for the ISP's failure to provide a means where someone whose FOID card has been revoked due to an erroneous clear and present danger report can correct or challenge that determination. He is sued in his official capacity pursuant to the principles set forth in *Ex Parte Young*, 209 U.S. 123 (1908).

6.      Elizabeth Leahy is the Firearms Safety Office Counsel of the Office of Firearms Safety ("OFS"), a division of the ISP which is responsible for developing protocols and procedures for evaluating risk for individuals whose access to firearms has been denied or revoked under Illinois law and overseeing and evaluating all appeals of FOID card and concealed carry license (CCL) with respect to the legality for restoration of firearms rights and privileges. Having the power to make decisions in these programs, the OFS is an administrative agency of the State of Illinois as defined by 735 ILCS 5/3-101.

7.     As Firearms Safety Office Counsel of the OFS, Defendant Leahy is directly responsible for the ISP's failure to provide a means where someone whose FOID card has been revoked due to an erroneous clear and present danger report can correct or challenge that determination. She is sued in her official capacity pursuant to the principles set forth in *Ex Parte Young*, 209 U.S. 123 (1908).

## STATEMENT OF FACTS

### False Tip to Chicago Police and Response:

8.     At or around 1:00AM on July 12, 2022, a high-school acquaintance of Weiner, S.A.[1], contacted the Chicago Police Department and falsely told them that Weiner was planning to kill several people in the West Loop upon waking that morning. The claimed basis was a text message Weiner had allegedly sent him, though S.A.'s call was actually a hoax.

9.     S.A. also said Weiner had a 'mental history,' that he had been admitted to the hospital several times for mental illness, and that he had access to an AR-15. None of this was true.

10.     To investigate, the Chicago Police first responded to S.A.'s apartment. S.A. met police at the threshold to his apartment, and was evasive answering the officers' questions about what they informed him was a very important matter.

11.     When the officers asked to see the text messages S.A. claimed was the basis for his concern, S.A. first demurred; then he disappeared into his apartment

---

[1] Plaintiff will not name S.A. in full in this Complaint, but will do so upon request from a party or the Court.

for over three minutes, leaving the officers in the hall with his apartment door closed.

12.     When S.A. finally returned to the apartment door, he was without any concerning texts; rather he told police that he had forgotten that he had deleted them.

13.     At the time S.A. contacted and was interviewed by Chicago Police, he was under the influence of alcohol and controlled substances.

14.     S.A. had no reason or basis to believe that Plaintiff was planning to kill several people in the West Loop upon waking that morning.

15.     Weiner did not and does not have a plan to kill anyone, anywhere at any time. Further, Weiner did nothing – even in jest - to give S.A. the impression that Weiner had such a plan or intent.

16.     Plaintiff did and does not have access to an AR-15 in Chicago, in compliance with M.C.C. § 8-20-075.

17.     Plaintiff does not have a 'mental history,' and has never been admitted to any hospital for mental illness.

18.     After leaving S.A.'s apartment, Chicago Police responded to Weiner's apartment sometime between 3:00AM and 4:00AM that same morning, and knocked loudly and announced their presence. Weiner was asleep at the time, but awoke from the noise and came to the door.

19.     Upon opening his apartment door, Weiner was greeted by a cadre of Chicago Police officers, ordered out of his apartment and detained by the officers.

20.    Police secured Weiner's legally-owned firearms for safekeeping and then transported Weiner—in custody—to the Jesse Brown VA hospital for a psychiatric evaluation.

21.    Weiner was not admitted to the hospital; rather, doctors at the VA hospital – non-plussed by what turned out to be a hoax - sent Weiner home shortly after he was evaluated by a psychiatrist in the emergency department.

22.    Chicago Police officers subsequently drove Plaintiff back to his apartment from the VA hospital and informed him how and where to pick up his firearms.

23.    At all times during this ordeal, Weiner cooperated fully, and did or said nothing to give the impression that Weiner was anything other than a mentally-healthy, law-abiding person.

Clear and Present Danger Determination:

24.    On or between July 12, 2022 and July 14, 2022 a Chicago Police Detective was assigned to investigate further. The detective subsequently notified ISP that the detective determined that Plaintiff posed a clear and present danger. 430 ILCS 65/8.1(d)(2).  20 Ill. Adm. Code 1230.120(b).

25.    Upon information and belief, the Chicago Police detective's determination was founded upon S.A.'s false tip to Chicago Police; the fact that legal weapons were present in Weiner's apartment; and the Chicago Police's decision to transport Weiner to the hospital for a psychiatric evaluation, which was

– in a classic case of circular reasoning - a decision grounded in S.A.'s false tip and the subsequent discovery of legal weapons in Weiner's apartment.

26.     Upon information and belief, the Chicago Police Detective's notification to ISP alleged that Weiner made certain communications and alleged that Weiner posed a risk, but did not allege facts showing that Weiner demonstrated any threatening physical or verbal behavior; any violent, suicidal or assaultive threats or actions; any behavior similar to any threatening physical or verbal behavior; or any behavior similar to any violent, suicidal or assaultive threats or actions.

27.     Based on the Chicago Police Detective's notification, ISP determined that Plaintiff met the definition of a clear and present danger, and revoked Plaintiff's FOID Card. 430 ILCS 65/8.1(d); 20 Ill. Adm. Code 1230.120(b).

28.     Plaintiff did not meet, does not meet and has never met Illinois' definition of a "clear and present danger."  This definition is as follows:

"Clear and present danger" means a person who:

(1)     communicates a serious threat of physical violence against a reasonably identifiable victim or poses a clear and imminent risk of serious physical injury to himself, herself, or another person as determined by a physician, clinical psychologist, or qualified examiner; or

(2)     demonstrates threatening physical or verbal behavior, such as violent, suicidal, or assaultive threats, actions, or other behavior, as determined by a physician, clinical psychologist, qualified examiner, school administrator, or law enforcement official.

430 ILCS 65/1.1.

29.     Upon information and belief, at no time on or around July 12, 2022, July 13, 2022 or July 14, 2022 did any physician, clinical psychologist, or qualified examiner determine that Weiner communicated a serious threat of physical violence against a reasonably identifiable victim or posed a clear and imminent risk of serious physical injury to himself or another person.

30.     Upon information and belief, at no time on or around July 12, 2022, July 13, 2022 or July 14, 2022 did any physician, clinical psychologist, or qualified examiner directly or indirectly notify ISP that Weiner communicated a serious threat of physical violence against a reasonably identifiable victim or posed a clear and imminent risk of serious physical injury to himself or another person.

31.     Upon information and belief, at no time on or around July 12, 2022, July 13, 2022 or July 14, 2022 did any physician, psychologist, qualified examiner, school administrator or law enforcement officer notify ISP of facts showing that Weiner demonstrated any threatening physical or verbal behavior; any violent, suicidal or assaultive threats or actions; any behavior similar to any threatening physical or verbal behavior; or any behavior similar to any violent, suicidal or assaultive threats or actions.

Clear and Present Danger Relief Procedures:

32.     ISP's procedures for restoration of Plaintiff's firearm rights require that:

> a.      Plaintiff provide a notarized statement in his own words detailing (i) any and all mental health admissions; (ii) his current mental status and condition; (iii) his mental health history, including any prior treatment or admissions; (iv)

whether he has complied with treatment and/or medications; (v) the dates and details of all actual or alleged acts of suicide or violence.

b.      Plaintiff provide the name and address of any agency and the date of any legal action and the county and state where any records are held with respect to any actual or alleged acts of suicide or violence in which law enforcement or the courts were involved.

c.      Plaintiff provide the name and location of any medical provider with respect to any actual or alleged acts of suicide or violence in which any medical care was provided.

d.      Plaintiff provide information to support his suitability for the restoration of his firearm rights including evidence that he will not be likely to act in a manner dangerous to public safety and that granting relief would not be contrary to the public interest.

e.      Plaintiff provide all psychiatric and counseling records related to mental health diagnosis or treatment provided to him during the previous five years.

f.      Plaintiff submit to and provide a forensic psychiatric evaluation on a specific form, performed by an Illinois licensed psychiatrist or clinical psychologist.

g.      Plaintiff provide certified copies of any court records that address his mental status or allegations he was threatening to harm himself or others; engaged in violence; or abused alcohol or drugs.

h.      Plaintiff provide at least two notarized letters from adults who are aware of the circumstances regarding the revocation of his FOID Card that state the adults': (i) full names, dates of birth, and relationships to Plaintiff; (ii) knowledge of the circumstances regarding the revocation of Plaintiff's FOID Card; (iii) opinions of Plaintiff's current mental health condition and risk of his dangerousness to himself or others; and (iv) opinion as to whether Plaintiff's possession of a firearm would be contrary to the public interest.

1230.70(b)(3)(A);
https://isp.illinois.gov/StaticFiles/docs/FirearmsSafety/Checklists/Final%20Checklis

ts/C&P%20Less%20Than%205%20Yr%20Prohibitor%20Requirements%20Checklist
.pdf

33.     The facts and circumstances giving rise to Weiner's clear and present

danger determination and FOID Card revocation—a high school acquaintance's

under-the-influence false tip to police—render the ISP's procedures described above

wholly arbitrary and constitutionally inequitable as applied to Weiner.

34.     ISP[2] will not permit Weiner to challenge ISP's determination that

Weiner meets the definition of a clear and present danger in the first instance

rather than to apply for relief from that determination. Weiner knows this because

he initially wrote ISP with this exact request, only to receive a response that he

needed to comply with the clear and present danger appeal requirements, and that

ISP would be doing nothing about Weiner's situation until that time.

35.     Weiner wishes to challenge ISP's determination that he meets the

definition of a clear and present danger in the first instance rather than to apply for

relief from that determination, but has no mechanism to do so - in an adversarial

hearing before a judge or a neutral decisionmaker - or otherwise.

36.     The Defendants' clear and present danger process allows law

enforcement officers to 'side-step' all judicial safeguards and strip individuals of

their Second Amendment rights for an indefinite period of time by simply filling out

forms and sending documents amongst themselves. More specifically, Illinois' clear

and present danger process allows a law enforcement officer to fill out a form and

---

[2] The responsibility for evaluating "clear and present danger" appeals shifts to the
Governor's new FOID Card Review Board as of January 1, 2023 (per 430 ILCS 65/10), but
except for the identity of the reviewing body, the appeal requirements will remain the
same.

transmit it to the Illinois State Police—and then ISP decides based on that form whether to strip an individual of his Second Amendment rights. Illinois' clear and present danger process thus allows law enforcement officers alone to strip individuals of their Second Amendment rights without any check by the judiciary.

37.    In the case of persons who can prove their revocation was the result of error or outside deceit, this deprivation is unconstitutional. Upon information and belief, no other State has a statutory clear-and-present-danger process that bypasses judicial review by allowing law enforcement officers to strip individuals of their Second Amendment rights for an indefinite period of time - based upon nothing more than their say-so and the okay of the ISP - without requiring full adversarial hearings. In this regard, Illinois is alone.

## COUNT I: VIOLATION OF RIGHT TO PROCEDURAL DUE PROCESS
## U.S. CONST. AMEND. XIV, 42 U.S.C.  §1983

38.    Weiner repeats, realleges, and incorporates Paragraphs 1 through 37, inclusive, as if fully restated herein.

39.    The Defendants' determination that Weiner meets the definition of a clear and present danger caused ISP to revoke Weiner's FOID Card and prevents ISP from issuing Weiner a new FOID Card. This also resulted in Weiner's CCL being suspended with no opportunity to regain it until his FOID Card is reinstated.

40.    The Defendant's refusal to permit Weiner to challenge their determination that Weiner meets the definition of a clear and present danger in the first instance, rather than to apply for relief from that determination, both facially

13

and as applied to Weiner under the facts of the instant case, violates Weiner's right to due process under the Fourteenth Amendment.

41.     Weiner, due to the Defendants' enforcement and application of an appeal system that, as applied to him, is arbitrary and allows no opportunity for resolution short of an uncertain, lengthy and intrusive process, has been denied his constitutionally guaranteed right procedural due process under the Fourteenth Amendment.

42.     By so burdening Weiner's ability to possess a FOID Card, and likewise a CCL, the Defendants have not only unjustifiably denied him his rights but have potentially effectively imposed an unending ban on Weiner's right to keep and bear arms for self-defense.

43.     Weiner has been affected by the Defendants' actions and deprived of his fundamental right to armed self-defense. He is not a person who was historically prohibited from possessing firearms, and has not done anything since to remove himself from those categories of persons able to exercise this fundamental right.

44.     The risk of the Defendants' erroneous deprivation of Weiner's interest through the FOID clear and present danger appeal process is great, as Weiner has been/was deprived of his fundamental rights with no opportunity to correct or undo the deprivation - short of a lengthy, arbitrary, and intrusive process - and the consequences include Weiner's sustaining of a severe or fatal injury should he have suffered/suffer a violent attack and been/be unable to properly defend himself.

45.     The value of additional or substitute procedural safeguards, such as implementing a method whereby Weiner can challenge his categorization as a clear and present danger, and the resulting FOID card revocation, within a reasonable timeframe and without being subjected to the clear and present danger appeal requirements, responding to inquiries, and offering hearings when appropriate, is high.

46.     The Defendants, under the color of law, both facially and as-applied, have deprived and are depriving Weiner of his right to keep and bear arms, in violation of his procedural due process rights under the Fourteenth Amendment to the United States Constitution. Weiner has been/is thus damaged in violation of 42 U.S.C. §1983. Weiner is therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued deprivation of his rights.

## COUNT II: VIOLATION OF RIGHT TO KEEP AND BEAR ARMS
## U.S. CONST. AMENDS. II AND XIV, 42 U.S.C. §1983

47.     Weiner incorporates and reallege Paragraphs 1 through 37, inclusive, as if fully restated herein.

48.     The Defendants' determination that Weiner meets the definition of a clear and present danger caused ISP to revoke Weiner's FOID Card and prevents ISP from issuing Weiner a new FOID Card. This also resulted in Weiner's CCL being suspended with no opportunity to regain it until his FOID Card is reinstated.

49.     Through Defendants wrongful revocation of Weiner's FOID card by erroneously labeling him as a clear and present danger, with no opportunity to challenge the categorization, both facially and as applied to Weiner under the facts

of the instant case, violates Weiner's right to keep and bear arms for self-defense under the Second Amendment.

50. By so burdening Weiner's ability to possess a FOID card under the FOID Card Act, and likewise a CCL, and by the imposition of any firearm-related disabilities upon him as a consequence thereof, as applied to him under the facts of the instant case, the Defendants have not only unjustifiably denied him his rights but have effectively imposed an indeterminate ban on Weiner's right to keep and bear arms for self-defense.

51. The continuing and ongoing deprivation of Weiner's ability to lawfully keep and bear arms is inconsistent with the Nation's historical tradition of firearm regulation.

52. The deprivation of individuals' rights to keep and bear arms, when that individual has a claim that the basis is false, without allowing that individual to directly challenge the basis for that deprivation in a meaningful proceeding, is inconsistent with the Nation's historical tradition of firearm regulation.

53. Defendants' refusal to permit direct challenges to clear and present danger determinations in the first instance, rather than only to permit individuals to apply for relief from those determinations, violates the Second Amendment rights to keep and bear arms.

54. Weiner has been injured by the Defendants' actions and deprived of his fundamental right to armed self-defense. He is not a person who was historically

prohibited from possessing firearms, and has not done anything since to remove himself from those categories of persons able to exercise this fundamental right.

55.     The Defendants, under the color of law, both facially and as-applied, have deprived and are depriving Weiner of his right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Weiner was and is thus damaged in violation of 42 U.S.C. §1983. Weiner is therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued deprivation of his rights.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Weiner prays this Honorable Court:

a.      find that the Defendants, facially and/or as applied to Weiner, have unjustifiably denied Weiner his Second Amendment right to keep and bear arms for self-defense through the use of 430 ILCS 65/8.1(d)(2) and 20 IAC 1230.120(b) and the lack of any hearing or other meaningful procedure whereby Weiner can challenge the deprivation as erroneously- and falsely-based;

b.      find that the Defendants, facially and/or as applied to Weiner, have unjustifiably denied Weiner his Fourteenth Amendment procedural due process rights through the use of 430 ILCS 65/8.1(d)(2) and 20 IAC 1230.120(b) and the lack of any adversarial hearing or other meaningful procedure whereby Weiner can challenge the deprivation of his firearm rights as erroneously- and falsely-based;

c.     enter an order granting Weiner injunctive relief that enjoins the Defendants from further deprivation of his rights to keep and bear arms and right to procedural due process through the use of 430 ILCS 65/8.1(d)(2) and 20 IAC 1230.120(b) and the lack of any adversarial hearing or other meaningful procedure whereby Weiner can challenge the deprivation of his firearm rights as erroneously- and falsely-based;

d.     enter a mandatory injunction requiring the Defendants to issue a FOID card and CCL to Weiner and relieve him of any and all other firearm-related disabilities the Defendants may have imposed upon him as a consequence of the false clear and present danger determination;

e.     enter a mandatory injunction requiring the Defendants to implement a meaningful procedure whereby Weiner can challenge his categorization as a clear and present danger, and the resulting FOID card revocation, within a reasonable timeframe in an adversarial proceeding and without being subjected to the clear and present danger appeal requirements;

f.     award Weiner his attorney's fees and costs, pursuant to 42 U.S.C. §1988 and F.R. Civ. P. 54(d); and,

g.     award Weiner such other and further relief as it deems just.


Dated: December 23, 2022                    Respectfully submitted,


                              _____/s/ David G. Sigale_____
                              Attorney for Plaintiff

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com